# IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF ARKANSAS
### WESTERN DIVISION

| | |
|---|---|
| **JAMES PIRAINO and** | |
| **PIRAINO CONSULTING INC.** | **PLAINTIFFS** |
| | |
| **v.** | **Case No. 4:14-cv-00267-KGB** |
| | |
| **JL HEIN SERVICE INC.** | |
| **d/b/a VIDEO REALITY,** | |
| **and JIM HEIN and** | |
| **CANDICE CARTER,** | |
| **in their individual capacities** | **DEFENDANTS** |

## ORDER

On May 16, 2014, the Court issued a temporary restraining order against defendants JL Hein Service, Inc., d/b/a Video Reality ("JLHS"), Jim Hein, and Candice Carter (Dkt. No. 22). Now before the Court is plaintiffs' motion for preliminary injunction (Dkt. No. 4), which has been fully briefed by all parties (Dkt. Nos. 4, 37, 38, 39, 42, 44, 45, 48, 49). On May 29, 2014, the Court found good cause to extend the temporary restraining order until a hearing could be held and a ruling entered on plaintiffs' motion for preliminary injunction (Dkt. No. 41). On June 4, 2014, the Court held a hearing on plaintiffs' motion for preliminary injunction (Dkt. No. 56). For the reasons that follow, the Court denies plaintiffs' motion for preliminary injunction in its entirety.

Also before the Court is plaintiffs' motion for contempt against defendant JLHS and all of its agents or employees, including Chris Tower, its current owner and president (Dkt. No. 32). JLHS filed a response (Dkt. No. 46). For the reasons that follow, the Court also denies plaintiffs' motion for contempt.

I.      **Motion For Preliminary Injunction**

When determining whether to grant a motion for preliminary injunction, this Court considers: (1) the movant's likelihood of success on the merits; (2) the threat of irreparable harm to the movant; (3) the balance between the harm to the movant and the injury that granting an injunction would cause other interested parties; and (4) the public interest.  *Heartland Acad. Cmty. Church v. Waddle*, 335 F.3d 684, 690 (8th Cir. 2003); *Dataphase Sys. Inc. v. C L Sys., Inc.*, 640 F.2d 109, 114 (8th Cir. 1981).  A preliminary injunction is an extraordinary remedy, and the burden of establishing the propriety of an injunction is on the movant.  *Roudachevski v. All-Am. Care Ctrs., Inc.*, 648 F.3d 701, 705 (8th Cir. 2011).  "At base, the question is whether the balance of equities so favors the movant that justice requires the court to intervene to preserve the *status quo* until the merits are determined."  *Dataphase*, 640 F.2d at 113.

While no single factor is determinative in balancing the equities, *id.*, "the probability of success factor is the most significant."  *Home Instead, Inc. v. Florance*, 721 F.3d 494, 497 (8th Cir. 2013).  "To that end, 'the absence of a likelihood of success on the merits strongly suggests that preliminary injunctive relief should be denied.'"  *Barrett v. Claycomb*, 705 F.3d 315, 320 (8th Cir. 2013) (quoting *CDI Energy Srvs., Inc. v. West River Pumps, Inc.,* 567 F.3d 398, 402 (8th Cir. 2009)).  Likewise, "[a]lthough no single factor is determinative when balancing the equities," a lack of irreparable harm is sufficient ground for denying a preliminary injunction. *Aswegan v. Henry*, 981 F.2d 313, 314 (8th Cir. 1992).  Thus, "[t]he threshold inquiry is whether the movant has shown the threat of irreparable injury."  *Glenwood Bridge, Inc. v. City of Minneapolis*, 940 F. 2d 367, 371 (8th Cir. 1991) (quoting *Gelco Corp. v. Coniston Partners*, 811 F.2d 414, 418 (8th Cir. 1987)).

Here, plaintiffs request that the Court convert the relief granted in the temporary restraining order to a preliminary injunction.  After a hearing on the motion for temporary restraining order—which the Court determined did not allow the basis of relief to be strongly challenged by defendants—the Court granted in part plaintiffs' motion for temporary restraining order, restricting defendants' transfer of assets with certain exceptions and providing relief that the parties agree is essentially a litigation hold.  The Court denied plaintiffs' motion for temporary restraining order as to relief that granted plaintiffs access to certain items and information, such as the corporate books, records, backup documentation, receipts, and expenditures of defendants.  In subsequent briefs and at the preliminary injunction hearing, plaintiffs revised and allegedly narrowed their request for access to these items and information.  Below the Court considers each of the three types of plaintiffs' requested relief.

Based on the record currently before the Court and having conducted two hearings on the matter, the Court determines plaintiffs have not shown likelihood of success on the merits for any claim in their complaint that is adequately tied to the transfer of assets relief or access to certain items and information relief that plaintiffs request in their motion for preliminary injunction.  "A court issues a preliminary injunction in a lawsuit to preserve the status quo and prevent irreparable harm until the court has an opportunity to rule on the lawsuit's merits.  Thus, a party moving for a preliminary injunction must necessarily establish a relationship between the injury claimed in the party's motion and the conduct asserted in the complaint."  *Devose v. Herrington*, 42 F.3d 470, 471 (8th Cir. 1994) (citations omitted).  At this stage, plaintiffs have not shown a likelihood of success on the merits of any claim against JLHS that would give plaintiffs ownership of the company's assets, allow only plaintiffs to do business as Video Reality, or have immediate access to JLHS's sales orders with service line items, invoices, and

certain emails for past, present, and future business done by JLHS with customers plaintiff James Piraino claims are his.  The parties agree that there was no written agreement or non-compete clause governing the relationship between them.

Plaintiffs also have not shown a threat of irreparable harm for any of the three types of relief requested.  First, as to the transfer of assets relief, while there is evidence that defendant Jim Hein transferred corporate assets into his personal accounts in the past, Mr. Hein's accountant testified that, based on his knowledge of the company's form and Mr. Hein's past ownership shares, Mr. Hein was entitled to those transfers.  Likewise, there is evidence now that Mr. Hein could not take corporate assets in the future.  Plaintiffs have submitted affidavits from Mr. Hein and Mr. Tower stating that Mr. Hein no longer owns or manages the company (Dkt. Nos. 38-1, 39-1).  Even if the Court does not consider these affidavits as evidence, the record supports the conclusion that Mr. Hein could not take corporate assets in the future, as Mr. Hein's accountant testified that Mr. Hein sold the company to Mr. Tower.  At most, Mr. Piraino testified that he does not know who owns the company.  On this record, the Court declines to find a threat of irreparable harm.

Moreover, the Court agrees with JLHS that *Groupo Mexicana v. Alliance Bond Fund*, 527 U.S. 308, 329 (1999), not *Kennedy Bldg. Assocs. v. CBS Corp.*, 476 F.3d 530, 535 (8th Cir. 2007), applies because, based on the Court's reading of the complaint, plaintiffs' claim for a constructive trust based on alleged fraudulent transfers is against separate defendants Mr. Hein and Ms. Carter only.  Further, because the overall basis of the complaint seeks money damages, it is unclear whether *Groupo Mexicana* or *Kennedy* applies to the individual defendants, despite plaintiffs' constructive trust claim against them.

Second, regarding the litigation hold relief, plaintiffs argue that more than a mere possibility of destruction exists in this case because Mr. Tower informed Mr. Piraino that he intended to move JLHS and Video Reality to a paperless environment (Dkt. No. 44, at 4-5). However, these conversations occurred before litigation began (*See* Dkt. No. 36, at 15-16). With litigation pending, defendants have an obligation to preserve evidence and any relevant documents are protected by the rules of discovery. There has been no indication since litigation began that defendants would destroy relevant documents or evidence in violation of their obligation and these protections. The Court reaches this determination having fully analyzed plaintiffs' pending motion for contempt, as addressed later in this Order, and the evidence put forth in support of plaintiffs' request. Thus, the Court determines extraordinary injunctive relief to compel preservation of documents is not necessary or appropriate.

Third, as to access to certain items and information that plaintiffs seek as relief, plaintiffs argue that their relationships with manufacturers and reputation and good will with customers will be irreparably harmed without access to sales orders with service line items, invoices, and certain emails related to all Arkansas customers and certain Oklahoma customers. The Court disagrees. Based on evidence before the Court, Mr. Piraino has been in contact with and servicing customers without these items. For example, before the temporary restraining order was entered, Mr. Piraino sent an email to over 100 customers explaining his lack of access to the server and inviting them to contact him "[i]f you've been trying to reach any of us without any luck, if you have open orders and need those installs completed, if I sent you quotes and you need to order, or if you need quotes" (Dkt. No. 39-1, at 13). Mr. Piraino received favorable responses to that email. He testified he has continued to schedule and complete work for customers since the litigation was filed. Further, Mr. Tower has shown willingness to coordinate

with Mr. Piraino to ensure that customers are serviced.  Mr. Tower has shared service order information with Mr. Piraino personally and with installers who are now working for Mr. Piraino.  As the Court stated in its temporary restraining order, and despite Mr. Piraino's testimony on the importance of the information requested, the Court is not convinced that Mr. Piraino's reputation and goodwill will suffer irreparable harm if the customers are serviced by plaintiffs without access to all of the information they once had.  This is especially true where Mr. Tower appears to be willing to coordinate reasonably with plaintiffs to do so, even if not in the exact manner Mr. Piraino would like.

## II.    Motion For Contempt

The Court denies plaintiffs' motion for contempt (Dkt. No. 32) and JLHS's request for attorney's fees and costs for responding to the motion.  Plaintiffs allege that JLHS violated the temporary restraining order by converting summaries of open invoices from Mr. Piraino's initials to Mr. Tower's initials.  However, JLHS took this action on or before the date the Court entered the temporary restraining order.  Even if it was clear that the conduct of which plaintiffs complain occurred after the temporary restraining order was entered, which it is not, JLHS's conduct did not violate the plain terms of the temporary restraining order.  Changing the initials on the summaries did not "destroy" or "delete" the records, and this action does not clearly show that Mr. Piraino will not be paid what he is owed for his work associated with those invoices.  In fact, there is evidence that Mr. Piraino has been paid by JLHS for certain invoices after litigation began and his relationship with defendants was terminated.

SO ORDERED this 5th day of June, 2014.

_____
KRISTINE G. BAKER
UNITED STATES DISTRICT JUDGE